ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG - 9 2018
CLERK, U.S. DISTRICT COURT
By _____

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3-18CR-409-M |
| DWAINE CARAWAY | (Related to Case Nos. 3:17-CR-678-M & 3:18-CR-169-N) |

**INFORMATION**

The United States Attorney Charges:

Introduction

1. From in or around 2011 to in or around 2017, Robert Carl Leonard, Jr., the president of Force Multiplier Solutions (FXS), a technology company that put cameras on school buses, paid, among others, **Dwaine Caraway**, a Dallas City Council Member for much of the relevant time period and the current Mayor Pro Tem of Dallas, over $450,000 in bribe and kickback payments/benefits in exchange for favorable official action, or the promise of favorable official action, related to FXS's stop-arm-camera program with Dallas County Schools (DCS) and Leonard's efforts to develop and profit from low income housing.

2. To disguise the bribe and kickback payments that **Caraway** and others received, Leonard funneled a significant portion of the illicit payments through various pass-through companies created and operated by his business associate, Slater Washburn

Swartwood, Sr.

3.  To further mask the illegal purpose of the payments that **Caraway** received through Swartwood, particularly through ELF Investments, the coconspirators attempted to characterize the payments as consulting fees. Later, Leonard and Swartwood attempted to recast a significant portion of those "fees" as a loan pursuant to a promissory note that **Caraway** signed but never intended to repay.

4.  Leonard also provided **Caraway** bribe and kickback payments in the form of checks which **Caraway** cashed at liquor stores or pawn shops, luxury suits, fully funded trips to New Orleans, Louisiana, Austin, Texas, and Las Vegas, Nevada, security cameras for **Caraway**'s home, a "loan" for **Caraway**'s father's home, funeral expenses for **Caraway**'s family members, a campaign bus, casino chips, and gambling money for the horse track.

5.  In addition, **Caraway** failed to report for income tax purposes a substantial portion of the bribe and kickback payments that he received from Leonard, and offset much of the income that he did report via phony business expenses.

6.  Specifically, on his 2014 tax returns, **Caraway** failed to report $97,000 that he received directly or indirectly from Leonard, primarily under the auspice of "consulting" fees paid to a company which **Caraway** owned and controlled.

7.  **Caraway** knowingly and willfully failed to disclose the $97,000 in income from Leonard to his tax preparer.

8.     **Caraway** filed a false and fraudulent tax return for tax year 2014 by omitting the $97,000 in payments that he received directly or indirectly from Leonard during 2014.

9.     In total, Leonard paid approximately $3.5 million in bribe and kickback payments to Dallas area officials, including **Caraway**, to help secure over $70 million in contracts, agreements, orders, and other beneficial treatment for FXS, all of which the coconspirators concealed from DCS, its board, the Dallas City Council, and the citizens of the school districts in which DCS operated school buses and provided other services, and the citizens of the City of Dallas.

10.    DCS, for its part, was left virtually bankrupt by the agreements it entered into with FXS and was ultimately abolished by voters in November 2017.

### Duty of Honest Services

11.    **Caraway** served as a Council Member on the Dallas City Council from before the beginning of the conspiracy until June 2015, and upon reelection thereafter in May 2017 to the present.

12.    **Caraway** was a public servant as a result of being a Council Member. **Caraway** owed a duty of honest services to the citizens of the City of Dallas to perform the duties and responsibilities of public office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

13.    The citizens of the City of Dallas expected, and were entitled to receive, **Caraway**'s honest services in the fulfillment of the Council Member's duties. It was a

violation of **Caraway**'s duty, and the citizens of the City of Dallas' rights to the Council Member's honest services, for **Caraway** to accept bribe and kickback payments from Leonard in exchange for favorable official action or the promise of favorable official action.

## Count One
## Conspiracy to Commit Honest Services Wire Fraud
### [Violation of 18 U.S.C. § 371]

14. All preceding paragraphs of this Information are realleged and incorporated by reference as if set forth fully herein.

15. From in or around 2011 to in or around 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Dwaine Caraway**, Leonard, Swartwood, Ricky Dale Sorrels, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

16. It was a part and object of the conspiracy that **Caraway**, Leonard, Swartwood, Sorrels, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive DCS, the school districts it serviced and their citizens thereof, the Dallas City Council, and the citizens of the City of Dallas of their intangible right to **Caraway**'s and Sorrells' honest services as public servants, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, Leonard paid bribe and kickback payments to **Caraway** and Sorrells in exchange for favorable official action, or the promise of favorable official action, and in connection therewith and in furtherance

thereof, the coconspirators transmitted and caused to be transmitted interstate electronic wire transfers of funds.

### Manner and Means of the Honest Services Fraud Conspiracy

BRIBE AND KICKBACK PAYMENTS TO **CARAWAY**

17. During the honest services fraud conspiracy, Leonard paid, and **Caraway** accepted, over $450,000 in bribes and kickbacks, in addition to directly or indirectly contributing over $40,000 to **Caraway**'s political campaigns.

18. In addition to money, Leonard solicited **Caraway**'s official actions and influence with bribes and kickbacks in the form of, among other things of value, checks which **Caraway** cashed at liquor stores or pawn shops, luxury suits, fully funded trips to New Orleans, Louisiana, Austin, Texas, and Las Vegas, Nevada, security cameras for **Caraway**'s home, a "loan" for **Caraway**'s father's home, funeral expenses for **Caraway**'s family members, a campaign bus, casino chips, and gambling money for the horse track.

19. **Caraway**, in his capacity as a City Council Member, took official action favorable to Leonard and FXS, including, but not limited to, voting on ordinances and authorizations in a way that forwarded FXS's business interests, pressuring the Dallas City Attorney's Office to provide a favorable opinion about the propriety of fines associated with FXS's stop-arm-camera program, and promising to use the Council Member's official position if and when necessary to forward Leonard's efforts to develop

low income housing.

CONCEALMENT OF THE BRIBE AND KICKBACK PAYMENTS

20. As part of the conspiracy, the coconspirators undertook significant efforts to disguise and conceal the source and purpose of the bribe and kickback payments to **Caraway** and others.

21. Leonard generally did not pay **Caraway** and others directly. Instead, Leonard caused bribe and kickback payments to be transferred to pass-through entities controlled by Swartwood, including Elf Investments, after which Swartwood, at Leonard's direction, would pay **Caraway** and others, or shell companies that they controlled.

22. **Caraway** received approximately $390,000 in bribe and kickback payments laundered through Swartwood's companies.

23. As part of the conspiracy, and as a further act of concealment, **Caraway** and others opened shell companies so it did not appear that they were directly receiving payments.

24. The coconspirators, in an attempt to grant the bribe and kickback payments an air of legitimacy, created sham consulting agreements.

25. As a further act of concealment, the coconspirators, at some point in the conspiracy, attempted to recharacterize past "consulting" payments to **Caraway** and others as a "loan," and executed fake loan documents to that end.

26. When Leonard made bribe and kickback payments directly to **Caraway, Caraway**

would often cash the checks at a liquor store or pawn shop to conceal the payments.

Overt Acts

27. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Dallas Division of the Northern District of Texas and elsewhere:

> a. On or about May 16, 2014, Swartwood, at Leonard's direction, caused approximately $15,000 to be wired from a bank account of ELF Investments to a bank account of a company owned and controlled by **Caraway**, which is known to the United States Attorney.

All in violation of 18 U.S.C. § 371.

## Count Two
### Tax Evasion
**[Violation of 26 U.S.C. § 7201]**

28. All preceding paragraphs of this Information are realleged and incorporated by reference as if set forth fully herein.

29. Starting in or about January 2014, and continuing through at least 2016, in the Northern District of Texas and elsewhere, the defendant, **Dwaine Caraway**, willfully attempted to evade and defeat the payment of a substantial income tax due and owing by him to the United States of America, for the tax year 2014, by substantially underreporting his income and by committing at least the affirmative acts described in paragraphs 3 and 5 through 8 of this Information.

In violation of 26 U.S.C. § 7201.



ERIN NEALY COX
UNITED STATES ATTORNEY

_/s/_

ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
JOSEPH A. MAGLIOLO
Assistant United States Attorney
Texas Bar No. 24074634
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: 214.659.8600
Fax: 214.659.8809