IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | **CASE NUMBER 3:18-CR-409-M** |
| | § | |
| DWAIN CARAWAY | § | |

## MOTION FOR TRANSFER TO HOME CONFINEMENT

TO THE HONORABLE BARBARA M. G. LYNN, CHIEF JUDGE OF THE UNITED STATES DISTRICT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION:

COMES NOW, DWAINE CARAWAY, Register Number 57553177, pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i), Section 1B1.13 of the U.S. Sentencing Guidelines, BOP program statement 5050.50 and 28 CFR Section 571.61, and through his counsel respectfully moves this Court for an order for transfer to home confinement.

Mr. Caraway is a 68-year-old currently incarcerated at the Big Spring Federal Correction Facility, Minimum Security Satellite Camp. Mr. Caraway pleaded guilty in the United States District Court for the Northern District of Texas to (1) Conspiracy to Commit Honest Services Wire Fraud 18 U.S.C. §371 and (2) Tax Evasion, 26 U.S.C. §7201. On April 8, 2018, he was sentenced to serve 56 months in federal custody. Mr. Caraway is clearly a "high risk" prisoner because of his age, medical conditions that he suffers from.

Prior to being charged with the above referenced offenses, Mr. Caraway had been under the care of various medical providers for various medical conditions, including but not limited to sleep apnea, hypertension, esophageal dyskinesia, hyperlipidemia, hypogonadism, polyneurophathy and other illnesses, all of which have been properly documented in his Pre-Sentencing Report,[1] and the attached letter from his medical provider, dated September 14, 2018 and marked as **EXHIBIT 1**.

During an occasion where he was brought back to Seagoville Detention Center, Mr. Caraway was transported to a medical facility in Dallas, Texas where he underwent a heart related procedure.[2]

Due to his age and current health conditions, he is in a vulnerable group for susceptibility to the Coronavirus and serious medical complications from that disease.

As of June 30, 2020, the BOP website was reporting 1,513 confirmed COVID-19 cases as well as 152 BOP staff who have tested positive for COVID-19[3]

On May 21, 2020 Mr. Caraway, through his counsel requested to be released to home confinement from the Warden at Big Spring FCI but has not received a response. More than 30 days have lapsed sine the request was made.

As this world health crisis has continued, federal judges across the country are

---

[1] *See* Pre-sentencing report

[2] *See* Medical reports contained in Defendant's file with BOP

[3] Https://www/bop.gov/coronavirus/.

ordering inmates in BOP custody to be released. One such judge, on May 19, 2020, took the unprecedented step of ordering the BOP to expedite the release of 837 potentially at-risk prisoners from the Elkton Federal Correction Institution in Ohio.[4] The order came after the court cited "poor progress" in the transfer of such prisoners to either home confinement or compassionate release.[5] "By thumbing their nose at their authority to authorize home confinement," the judge wrote, the Bureau of Prisons "threaten staff and they threaten low security inmates."[6] The judge also noted that testing "can only go so far in helping the institution fight the pandemic," while social distancing "has been, and continues to be, the institution's best hope" for fighting the disease's spread. The initiative taken by judges is not just limited to Ohio. In Michigan, on April 21, 2020, U.S. District Court Judge Paul L. Maloney, ordered the compassionate release of a man convicted of multiple bank robberies.[7] Judge Maloney found extraordinary and compelling reasons for his release, writing "FCI Elkton has the second highest number of deaths of any federal prison...Further, Love has a higher risk of falling severely ill

---

[4] https://www.cleveland19.com/2020/05/19/federal-judge-orders-prison-officials-expedite-elkton-inmates-due-covid-risks.

[5] *Id.*

[6] *Id.*

[7] https://www.wzzm13.com/srticle/news/crime/bank-robber-gets-compassionate-release-from-prison-due-to-coronavirus/69-c2d761c0-87-e3-479a-a557-c05537022b55.

from COVID-19."[8] In California, an inmate, Mr. Fischman, was ordered released on May 1, 2020 from FCI Terminal Island even after testing positive for COVID-19. (**Attached Exhibit 2**):

> The Court recognizes that the Bureau of Prisons is trying to control the spread of COVID-19 and care for the health and safety of the inmates within its facilities. Yet Mr. Fischman's age and diagnosis put him at heightened risk of becoming seriously ill. The Court finds that these circumstances establish "extraordinary and compelling reasons" warranting Mr. Fischman's immediate release. See 18 U.S.C. § 3582(c)(1)(A)(I).

In Connecticut, citing a "once-in-a-century public health crisis," on May 12, 2020, U.S. District Court judge Michael P. Shea ordered prison officials at the FCI in Danbury to speed up the release of inmates to prevent the spread of COVID-19.[9] Judge Shea ordered Warden Easter to submit to the court a list of medically vulnerable inmates within three days: including individuals age 65 and older or those who have chronic lung disease like asthma or chronic bronchitis, chronic kidney disease, serious heart conditions or are immuno-compromised or are severely obese.[10]

Not only are these judges releasing individual people, but they are requiring wardens to take the steps themselves to release those most vulnerable so that everyone,

---

[8] https://www.wzzm13.com/srticle/news/crime/bank-robber-gets-compassionate-relesase-from-prison-due-to-coronavirus/69-c2d761c0-87-e3-479a-a557-c05537022b55.

[9] https://ctmirror.org/2020/05/13/judge-orders-federal-prison-to-expedite-release-of-danbury-inmates/.

[10] *Id.*

inside the prison and out, can be protected. As Judge Shea wrote, the BOP needs to implement a process "that makes full and speedy use of the home confinement authority" without arbitrarily making inmates ineligible based on their conviction, disciplinary history or the amount of time they have served.[11]

The need to address a potential order of home confinement for Mr. Caraway is urgent. President Trump declared a National Emergency concerning the novel Coronavirus disease (COVID-19) outbreak on March 13, 2020.[12] The United States surpassed all other nations in the number of reported COVID-19 cases less than two weeks later. As of July 1, 2020, 2,686,258 cases of COVID-19 have been reported, and 128,062 people have died. As of July 1, 2020, in Texas, 172,368 COVID-19 cases have been reported, and 2,503 people have died. Howard County, where Mr. Caraway is being housed, had 40 reported COVID-19 cases, and 1 death as of July 1, 2020. Even with protective measures in place, government officials believe the number of COVID-19 cases and deaths will continue to increase. As of July 1, 2020, over 9300 cases per day are reported in the state.

A COVID-19 outbreak in a correctional facility has already resulted in devastating impacts on older, medically vulnerable people. According to FAIR Health, "correctional detention facilities 'present unique challenges for control of COVID-19 transmission

---

[11] *Id.*

[12] Proclamation, President Donald Trump, The Whitehouse (Mar.13, 2020)

among incarcerated/detained persons and staff.'" *United States v. Kennedy*, No. 18-20315, 2020 U.S. Dist. LEXIS 53359 (E.D. Mich. Mar. 27, 2020). The average cost to the system of a COVID-19 inpatient stay is between $38,000 and $73,000, depending on the severity of the disease.[13] Courts have taken "judicial notice that, for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality." *Basank v. Decker*, 2020 U.S. Dist. LEXIS 53191 (S.D.N.Y. Mar. 26, 2020). Older adults and individuals with underlying medical conditions are at an increased risk of severe illness from COVID-19.[14] Specifically, the most frequent comorbidities for COVID-19 are diabetes and hypertension.[15] Both diagnoses result in increased hospitalization and mortality rates.[16] Individuals with diabetes are three times as likely to die from the virus.[17] Recognizing that COVID-19 has ripped through federal jails and prisons, Attorney General Barr issued the April 3, 2020 memorandum directing the Bureau of Prisons ("BOP") to expedite processing of vulnerable inmates.[18] The cramped and unsanitary conditions

---

[13] COVID-19: The Projected Economic Impact of the COVID-10 Pandemic on the US Healthcare System, FAAIR Health 2 (Mar. 25, 2020)

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] See Office of Attorney general, Increasing Use of Home Confinement at Institutions Most Effected by COVID-19, Politico (Apr. 3, 2020)

within prisons endangers inmates, corrections officers, and the broader community.[19] As of July 1, 2020 there were 1,563 inmates and 164 BOP Staff who had tested positive for COVID-19 and 90 federal inmate deaths. BOP staff members around the country have filed workplace safety complaints due to the safety risks inherent in working in a prison during the outbreak of COVID-19.

**Mr. Caraway is at significant risk in the prison environment.**

Mr. Caraway is in dire risk of severe illness or premature death in the facility due to COVID-19. Mr. Caraway is in at-risk categories due to his diagnoses of hypertension and sleep apnea and being overweight. (**See Exhibit 1**)

One of the best ways to prevent contracting COVID-19 is simply to avoid close contact with others by practicing social distancing. However, "it goes without saying that prisons [are] generally crowded spaces, and therefore are less than conducive to the practice of social distancing." *United States v. Roeder*, No. 20-1682, 2020 U.S. App. LEXIS 10246 (3d Cir. Apr. 1, 2020). "It is not possible for a medically vulnerable inmate to isolate himself in [a correctional setting] as recommended by the CDC." *United States v. Ramos*, 18-CR-30009-FDS, 2020 U.S. Dist. LEXIS 52586, at *4 (D. Mass. Mar. 26, 2020). There are reports of bathrooms running out of soap, commonly used areas that cannot be sanitized, and the same staff members attending to sick and

---

[19] Kimberly Kindy, et. Al., 'Disaster Waiting to Happen':Thousand of Inmates Released as Jails and Prisons Face Coronavirus Threat, Washington Post (Mar. 25, 2020)

quarantined people and those in the general population.

As one district court has articulated, "As prison officials are beginning to recognize around the country, even the most stringent precautionary measures— short of limiting the detained population itself—simply cannot protect detainees from the extremely high risk of contracting this unique and deadly disease." *Malam v. Adducci,* No. 20-10829, 2020 U.S. Dist. LEXIS 59407, at *22 (E.D. Mich. Apr. 5, 2020). Wider exposure in these current conditions is likely.

### I. Home Confinement Analysis

Mr. Caraway respectfully asks the Court to order him to home confinement instead of imprisonment at the federal facility based on "extraordinary and compelling reasons," to be discussed below. Due to the recent devastating COVID-19 outbreak, Mr. Caraway's status as a model inmate and his medical conditions, Mr. Caraway should be released as quickly as possible from federal prison and ordered to serve the rest of his sentence under home condiment for his health and safety, as well as for the health and safety of others.

#### A. This Court should grant relief as 30 Days Have Elapsed Since Mr. Caraway's Request to BOP.

The unanticipated and widespread outbreak of COVID-19 results in "extraordinary and compelling" circumstances. First, Mr. Caraway suffers from hypertension and sleep apnea and other illnesses making him more susceptible to medical complications from

COVID-19. Second, the conditions in prison simply do not allow for social distancing, the method recommended by the Center for Disease Control to help stop the spread of COVID-19. Many courts have already agreed that COVID-19 constitutes "extraordinary and compelling" circumstances under the First Step Act ("FSA").

In *United States v. Muniz*, the United States District Court for the Southern District of Texas granted the defendant's petition for early release after considering the defendant's age, medical condition, and the rapidity with which COVID-19 can spread among prisoners. *Muniz*, 2020 U.S. Dist. LEXIS 59255. In *Muniz*, the defendant was imprisoned for conspiracy to possess with intent to distribute a controlled substance. *Id.* The defendant had multiple illnesses, including end stage renal disease, diabetes, and arterial hypertension. *Id.* at *5. In addition to these illnesses, the Court also found reported cases of COVID-19 in prisons to be a persuading factor. *Id.* at *4. In particular, the Court discussed two cases in Chicago's Cook County jail that resulted in 101 inmates and a dozen employees testing positive for COVID-19 in less than a week. *Id.* Additionally, at least one inmate and staff member tested positive for COVID-19 in the facility where the defendant was housed. *Id.* at *5. The court determined that the defendant was particularly vulnerable to illness from COVID-19 due to his medical conditions, the confirmed cases in the facility where the defendant was housed, and the quickness with which COVID-19 can spread. *Id.* at *7.

Similar to the movant in *Muniz*, Mr. Caraway is non-violent and suffers from

ailments that put him at risk for contracting and spreading COVID-19. Mr. Caraway is a man in his late 60's who does not pose a threat to the community upon release. He was convicted of two non-violent charges and already has a plan in place for re-entry. Additionally, Mr. Caraway meets the requirements for extraordinary and compelling circumstances. The Center for Disease Control acknowledged that correctional detention facilities present unique challenges for control of COVID-19 transmission among incarcerated persons, and staff. Mr. Caraway's concerns are warranted. His plea for an order allowing him to serve the rest fo sentence under home confinement, in light of the state of the national emergency due to COVID-19, is compelling.

**C. Mr. Caraway is not a danger to his community and should allowed to serve the rest of his sentence under home confinement.**

The Court, in determining if Mr. Caraway should be allowed to serve the rest of his sentence under home confinement, must decide if Mr. Caraway is a danger under the factors of 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13 appl. n. 1. The factors include: the nature of the offense, including whether it was violent, "the weight of the evidence against" the defendant, the defendant's character, physical condition, criminal history and community or family ties, whether the defendant was on probation or parole at the time of his arrest, and the seriousness of the danger the defendant poses to the community. 18 U.S.C. § 3142(g). When Mr. Caraway was charged, he had no violent criminal history. Mr. Caraway also does not have a history of drug or alcohol abuse. There are no

allegations of violence made against him. He also has had no disciplinary infractions during his time at Big Spring FCI.

### Home Confinement Plan

Mr. Caraway is a 68-year-old man who suffers from numerous physical ailments. Immediately following a home confinement order from this Court, Mr. Caraway will travel directly to his home in Dallas, Texas. Mr. Caraway is on Social Security and if allowed to finish his sentence under home confinement, he will be able to get the care that he needs while maintaining social distancing protocols.

Mr. Caraway has no intention of leading anything but law-abiding life with his family in his remaining years. His release from federal facility will protect his health and safety, as well as reduce density in the prison, promoting the health and safety of others.

### D. The Applicable Factors of § 3553(a) Weigh in Favor of Relief.

The court must consider the factors in § 3553(a) when determining whether to modify a prison sentence. 18 U.S.C. § 3582(c)(1)(A). However, only to the extent that those factors are applicable. *Id.* The applicable factors here include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) he need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    © to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The court shall also not impose a sentence that is greater than necessary to comply with subsection (2). *Id.*

The first relevant factor looks at the nature of the offense and the character of the Defendant. *Id.* § 3553(a)(1). As mentioned above, Mr. Caraway has no prior history of violent crimes. Mr. Caraway was arrested on a charge of (1) Conspiracy to Commit Honest Services Wire Fraud 18 U.S.C. §371 and (2) Tax Evasion, 26 U.S.C. §7201. These are serious, though non-violent offenses. He has managed to maintain a good relationship with his wife and she is fully supportive of him serving the rest of his sentence under home confinement. This factor weighs in favor of Mr. Caraway's immediate release from custody as his crimes were non-violent and he is not a danger to society.

The second relevant factor asks the court to consider the enumerated purposes of punishment in § 3553(a)(2). *Rodriguez*, 2020 WL 1627331 at *23. The court, following those purposes, should "impose a sentence sufficient, but not greater than necessary, to comply." § 3553(a). The release of Mr. Caraway to home confinement would result in

"just punishment." Mr. Caraway's charges were serious, but he has shown good conduct and has served many months already for these crimes. He respects the law and has only been remorseful in his time in prison. While there, he started a class where inmates were taught how not to re-offend. To leave Mr. Caraway in prison, without the ability to social distance, is to put his health and the health of others at serious risk. For someone with his ailments it could be a death sentence. That would not be a just punishment for his level of offense. Further, Mr. Caraway poses no threat to the community as these were non-violent offenses.

At this point, the facility is also not able to adequately follow the CDC's guidelines on social distancing, leaving Mr. Caraway, his fellow inmates, and BOP staff in grave danger. What would have been imaginable a few months ago, is now a reality. Given the circumstances, Mr. Caraway's continued imprisonment no longer complies with the sentencing purposes, as his punishment is now greater. As this factor too weighs in favor of relief, the court should order Mr. Caraway to serve the rest of his sentence under home confinement.

The final relevant factor has courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Because the Covid-19 pandemic has created unprecedented difficulties for BOP and the inmates incarcerated there, the significance

of the amount of time being served has also changed. Serving a custodial sentence in a time when the inmates around an incarcerated individual are contracting and even dying from a highly communicable disease is much more punitive than it was even just a few months ago. For these reasons, Mr. Caraway has served a relatively adequate amount of time in prison and will serve the rest of his sentence under home confinement to meet the goals of sentencing.

 Mr. Caraway is a 68-year-old man vulnerable to severe consequences of the coronavirus. At this moment, the Court has "extraordinary and compelling" reasons to allow him to serve the rest of his sentence at home. We respectfully request that this Court grant Mr. Caraway's release to home confinement.

Respectfully submitted,

**PAYMA, KUHNEL & SMITH, P.C.**
PAYMA LAW CENTER
1126 N. Zang Blvd.
Dallas, Texas 75203
(214) 999-0000 Tel
(214) 999-1111 Fax
Michael@PKSattorneys.com

*/s/ Michael D. Payma*
**MICHAEL PAYMA**
Texas State Bar No. 00790560

**CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing has been forwarded to Mr. Andrew Wirmani, Assistant United States Attorney in charge of this case, on July 22, 2020, utilizing the ECF system which sent notification of the filing and a link to an electronic copy the document to all parties that participated in the ECF system.

                                         */s/ Michael D. Payma*
                                         **MICHAEL D. PAYMA**

# EXHIBIT A



**BaylorScott&White**
HEALTHTEXAS PROVIDER NETWORK

September 14, 2018

                                               **BAYLOR SCOTT & WHITE SIGNATURE**
                                               **MEDICINE TOM LANDRY**
                                         411 N Washington Ave Suite 3000
                                                         Dallas TX 75246
Dwaine R Caraway                                    Phone: 214-820-8361
1934 Argyle Ave                                        Fax: 214-820-8106
Dallas TX 75203

To Whomever This May Concern:

Dwaine R. Caraway is under my care for a multitude of medical conditions including essential hypertension, allergic rhinitis, sleep apnea, esophageal dyskinesia, hyperlipidemia, hypogonadism, polyneuropathy, carpal tunnel syndrome, plantar fasciitis, and depression.

He was seen recently for back pain, heal pain, indigestion, nasal congestion, headaches, rectal bleeding, knee pain, hyperglycemia, and urinary urgency.

He requires a multitude of medications, monitoring for blood sugars and use of a CPAP machine with sleep.

Sincerely,

*[signature]*

David Winter, MD